IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KECIA ROSTOCIL,

              Plaintiff,

     v.

**CAROLYN W. COLVIN**, Commissioner of
the Social Security Administration,

           Defendant.

Case No. 3:12-cv-01526-SI

**OPINION AND ORDER**

Bruce W. Brewer, Law Offices of Bruce W. Brewer, PC, P.O. Box 421, West Linn, Oregon
97068. Of Attorney for Plaintiff.

S. Amanda Marshall, United States Attorney, and Adrian L. Brown, Assistant United States
Attorney, U.S. Attorney's Office, District of Oregon, 1000 S.W. Third Avenue, Suite 600,
Portland, Oregon 97204; Jeffrey R. McClain, Special Assistant United States Attorney, Office of
the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A,
Seattle, Washington 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

       Kecia Lee Rostocil seeks judicial review of the final decision of the Commissioner of the

Social Security Administration ("Commissioner") denying her application for disability

insurance benefits. For the following reasons, the Commissioner's decision is REVERSED and

REMANDED for an award of benefits.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper

legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g);

*see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence means

more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Bray v. Comm'r Soc. Sec.*

*Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039

(9th Cir. 1995)).

If "the evidence is susceptible to more than one rational interpretation," the Court must

uphold the Commissioner's conclusion. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a

rational reading of the record, and the Court may not substitute its judgment for that of the

Commissioner. *See Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005). A reviewing court,

however, "must consider the entire record as a whole and may not affirm simply by isolating a

'specific quantum of supporting evidence.'" *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007)

(quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). The court may review

"only the reasons provided by the" Administrative Law Judge ("ALJ") "in the disability

determination and may not affirm the ALJ on a ground upon which [the ALJ] did not rely." *Id.*;

*see also Bray*, 554 F.3d at 1225.

## BACKGROUND

### A.  The Application

Ms. Rostocil was born on May 22, 1968 and is 45 years old. AR 34. She protectively filed an application for disability insurance benefits on May 4, 2010, alleging disability beginning December 1, 2007. AR 26. She alleges disability due to fibromyalgia, diabetes mellitus, weak manic depression, "neuropathy hypertension," hypothyroidism, and sleep apnea. AR 185. The Commissioner denied her application initially and upon reconsideration; thereafter, Ms. Rostocil filed a written request for a hearing before an ALJ. AR 26. After an administrative hearing held on September 1, 2011, the ALJ ruled that Ms. Rostocil is not disabled. AR 26-36. The Appeals Council denied Ms. Rostocil's request for review, making the ALJ's decision the final decision of the Commissioner. AR 1. Ms. Rostocil now seeks judicial review of that decision, requesting remand.

### B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. § 404.1520(a)(4). The five-step sequential process asks the following series of questions:

> 1.      Is the claimant performing "substantial gainful activity?" 20 C.F.R. § 404.1520(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done

for pay or profit. 20 C.F.R. § 404.1510. If the claimant is
performing such work, she is not disabled within the meaning of
the Act. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not
performing substantial gainful activity, the analysis proceeds to
step two.

2.      Is the claimant's impairment "severe" under the
Commissioner's regulations? 20 C.F.R. § 404.1520(a)(4)(ii).
Unless expected to result in death, an impairment is "severe" if it
significantly limits the claimant's physical or mental ability to do
basic work activities. 20 C.F.R. § 404.1521(a). This impairment
must have lasted or must be expected to last for a continuous
period of at least 12 months. 20 C.F.R. § 404.1509. If the claimant
does not have a severe impairment, the analysis ends. 20 C.F.R.
§ 404.1520(a)(4)(ii). If the claimant has a severe impairment, the
analysis proceeds to step three.

3.      Does the claimant's severe impairment "meet or equal" one
or more of the impairments listed in 20 C.F.R. Part 404, Subpart P,
Appendix 1? If so, then the claimant is disabled. 20 C.F.R.
§ 404.1520(a)(4)(iii). If the impairment does not meet or equal one
or more of the listed impairments, the analysis proceeds beyond
step three. At that point, the ALJ must evaluate medical and other
relevant evidence to assess and determine the claimant's "residual
functional capacity" ("RFC"). 20 C.F.R. § 404.1520(e). This is an
assessment of work-related activities that the claimant may still
perform on a regular and continuing basis, despite any limitations
imposed by his or her impairments. *Id.* After the ALJ determines
the claimant's RFC, the analysis proceeds to step four.

4.      Can the claimant perform his or her "past relevant work"
with this RFC assessment? If so, then the claimant is not disabled.
20 C.F.R. § 404.1520(a)(4)(iv). If the claimant cannot perform his
or her past relevant work, the analysis proceeds to step five.

5.      Considering the claimant's RFC and age, education, and
work experience, is the claimant able to make an adjustment to
other work that exists in significant numbers in the national
economy? If so, then the claimant is not disabled. 20 C.F.R.
§ 404.1520(a)(4)(v); 404.1560(c). If the claimant cannot perform
such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also*

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Commissioner bears the burden of

proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's [RFC], age, education, and work experience." *Id.*; *see also* 20 C.F.R. § 404.1566 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

The ALJ performed the sequential analysis in his October 20, 2011 decision. AR 26-36. At step one, the ALJ found that Ms. Rostocil did not engage in substantial gainful activity since her alleged onset date of December 1, 2007 through December 31, 2010, her date last insured. AR 28. At step two, the ALJ concluded that Ms. Rostocil's fibromyalgia, diabetes mellitus, left ulnar neuropathy post release in June 2010, depression, anxiety with panic attacks, posttraumatic stress disorder, and obesity were severe impairments. AR 28. At step three, the ALJ ruled that Ms. Rostocil did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in the regulations. AR 29.

The ALJ next assessed Ms. Rostocil's RFC. The ALJ found that Ms. Rostocil retained the capacity to perform less than the full range of light work as defined in 20 C.F.R. § 404.1567(b). AR 30. Specifically, the ALJ found that Ms. Rostocil: (1) should never climb ladders, ropes, or scaffolds; (2) can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, crawl, and operate foot controls; (3) should avoid concentrated exposure to vibration and hazards; and (4) should have no interaction with the public and superficial interaction with co-workers, but no close cooperation or coordination. *Id.* The ALJ limited Ms. Rostocil's RFC to

performing unskilled work and routine tasks. *Id.* At step four, the ALJ determined that Ms. Rostocil's RFC rendered her unable to perform her past relevant work. AR 34.

In determining the RFC, the ALJ gave Ms. Rostocil's testimony "[l]ittle weight" compared to the objective medical evidence, and "some" but "not controlling" weight to a Veterans Affairs ("VA") determination that she was 80 percent unemployable ("Original Determination"). AR 33-34. The ALJ was unable to consider a second VA determination finding Ms. Rostocil 100 percent unemployable ("September 2011 Determination") because the VA issued it on September 30, 2011, after the hearing, and Ms. Rostocil did not submit it for the record until March 5, 2012, after the ALJ's decision. AR 311, 318.

At step five, based on the testimony of a vocational expert ("VE"), the ALJ concluded that Ms. Rostocil could perform jobs that existed in significant numbers in the national economy. AR 35-36. Thus, the ALJ ruled that Ms. Rostocil is not disabled. AR 36.

## DISCUSSION

Ms. Rostocil argues that the ALJ erred by: (1) not offering clear and convincing evidence for giving little weight to her subjective symptom testimony; (2) not considering the VA's September 2011 Determination that Ms. Rostocil is 100 percent unemployable; and (3) finding that her sleep apnea is not a medically determinable severe impairment.

**A.  Ms. Rostocil's Credibility**

Ms. Rostocil argues that the ALJ erred by discrediting her symptom testimony and should have given more weight to her testimony about her extertional capacity. Pl.'s Brief, ECF 26 at 8-9. The Court finds that the ALJ failed to provide specific, clear, and convincing reasons to reject much of Ms. Rostocil's testimony. Therefore, the Court reverses the ALJ's determination that Ms. Rostocil's testimony regarding the severity of her limitations was not fully credible.

### 1. Legal Standards

There is a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 504 F.3d at 1036 (quotation marks and citation omitted). When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991)).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The Commissioner recommends assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that

PAGE 7 – OPINION AND ORDER

precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* SSR 96-7p, 1996 WL 374186 (Jul. 2, 1996).

Further, the Ninth Circuit has said that an ALJ "may consider . . . ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, . . . other testimony by the claimant that appears less than candid [, and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883. The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004).

### 2.   The ALJ's Credibility Analysis

The ALJ, applying the first step of the credibility framework, found "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." AR 31. In applying the second step, however, the ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . [RFC] assessment." *Id.* The ALJ did not find evidence of malingering. Rather than discrediting Ms. Rostocil's statements entirely, the ALJ gave them "[l]ittle weight." AR 33.

The ALJ offered several specific reasons for giving Ms. Rostocil's symptom testimony little weight overall: (1) her improved management of her psychiatric symptoms caused by major depressive disorder, posttraumatic stress disorder, and anxiety with panic attacks (collectively, "psychiatric symptoms"); (2) her failure to seek additional treatment for her left ulnar neuropathy; (3) the improvement of her fibromyalgia pain symptoms with medication; and (4) her engagement in activities of daily living. AR 32-34. The Court addresses each of these reasons in turn.

### a.  Improvement of psychiatric symptoms

Ms. Rostocil bases her disability claim, in part, on her diagnosed psychiatric disorders. Although she did not testify at the hearing regarding the disabling symptoms that result from her psychiatric disorders, the ALJ reviewed the medical records to determine whether Ms. Rostocil's psychiatric disorders could credibly prevent her from performing work activity consistent with the ALJ's RFC.

The ALJ provided specific, clear, and convincing reasons for finding improvement of Ms. Rostocil's psychiatric symptoms such that her psychiatric disorders are not totally disabling. The ALJ found that Ms. Rostocil's "reported improvement of psychiatric symptoms with medication and therapy, and treatment provider opinions that [her] symptoms had dramatically improved suggest that [her] symptoms are not so severe [that] they would prevent her from performing basic work activity consistent with the [RFC]." AR 32-33.

Specifically, the ALJ cited Ms. Rostocil's July 2010 report that she was handling the stress in her life better. AR 32, 446. The ALJ noted that Ms. Rostocil found "her anxieties and emotions were more manageable, and she had increased self-confidence." AR 32, 672. Treatment records cited by the ALJ discuss Ms. Rostocil's "dramatic improvement" and her "abilit[y] to handle more stress . . . without decompensating." AR 32, 672, 680-81. The ALJ also

noted that Ms. Rostocil was graduating from a dialectical behavior therapy skills for living group and looking forward to attending a graduate group. AR 32, 633. Further, the ALJ found that Ms. Rostocil's Global Assessment of Functioning ("GAF") scores, ranging from 55 to 65, generally indicate that she has "only mild to moderate symptoms or impairment in social, occupational, or school functioning." AR 32. The ALJ also weighed the fact that Ms. Rostocil "has occasional exacerbation of her symptoms due to situational factors" against her reported "overall improvement of her symptoms with medication and psychotherapy." AR 32.

The Court has reviewed the record and finds that the ALJ's specific reasons for finding improvement in Ms. Rostocil's psychiatric symptoms are both rational and reflective of the record as whole. Although the record might also rationally support a finding more favorable to Ms. Rostocil, the Court will not substitute its judgment for that of the ALJ's. The ALJ has provided specific, clear, and convincing evidence that Ms. Rostocil's psychiatric symptoms are not so severe as to prevent her from performing work consistent with her RFC. *See Burch*, 400 F.3d at 679. The Court finds, however, that although this evidence supports the ALJ's conclusion that Ms. Rostocil's psychiatric disorders are not totally disabling, it is not evidence of malingering and does not support discrediting Ms. Rostocil's credibility overall and testimony at the hearing.

### b. Failure to treat left ulnar neuropathy

The ALJ did not provide specific, clear, and convincing reasons for discrediting Ms. Rostocil's testimony regarding her left ulnar neuropathy. The ALJ found that Ms. Rostocil's "medical records do not indicate that [she] requested any additional treatment for" her left ulnar neuropathy, suggesting that her associated symptoms were not as severe as she stated. AR 32.

An ALJ may consider a claimant's "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment" for allegedly severe pain as a factor

undermining her credibility. *Smolen*, 80 F.3d at 1284; *see also Burch*, 400 F.3d at 681 (finding that the ALJ properly partially discredited claimant's back pain testimony because she did not seek treatment for three to four months). But an ALJ also "has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001) (citation omitted).

Ms. Rostocil underwent a left ulnar nerve transposition in June 2010. AR 53, 748. At the September 2011 hearing, she testified that she "[has] to do more physical therapy before they'll do anything," presumably referring to her treatment providers. AR 53. The record does not indicate that Ms. Rostocil sought physical therapy or other treatments after her surgery and she has not explained why she failed to seek additional treatment. The ALJ did not ask Ms. Rostocil why she failed to seek additional treatment, despite inquiring about her left elbow surgery during the hearing. AR 53. As a result, the record is ambiguous as to whether Ms. Rostocil pursued treatment after her surgery but still needs to do "more physical therapy," or whether she has not pursued treatment at all.

The Court finds that the ALJ did not properly develop the record regarding Ms. Rostocil's treatment of her left ulnar neuropathy following her June 2010 surgery. The ALJ's reliance on the record as developed is not a specific, clear, and convincing reason for discrediting Ms. Rostocil's testimony.

### c.  Improvement of fibromyalgia pain symptoms

The ALJ also does not provide clear and convincing reasons for finding that Ms. Rostocil's fibromyalgia symptoms are not as severe as she claims. The ALJ found that Ms. Rostocil's "reported improvement of pain symptoms with medication suggest that her symptoms are not as severe as she has alleged and would not prevent her from performing basic

work activity consistent with the [RFC]." AR 31. Fibromyalgia is "a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue." *Benecke v. Barnhart*, 379 F.3d 587, 589 (9th Cir. 2004). Fibromyalgia's cause or causes are unknown, there is no cure, and its symptoms are entirely subjective. *Rollins v. Massanari*, 261 F.3d 853, 855 (9th Cir. 2001) (citation omitted).

The ALJ relied on three medical reports to find improvement of Ms. Rostocil's fibromyalgia symptoms. AR 31. First, a March 2008 medical report states that Ms. Rostocil was "[w]alking approximately 2 miles" and felt that her medication was "helpful." AR 31, 1503. Second, in June 2009, Ms. Rostocil found ibuprofen and hydrocodone "helpful for pain" and felt she was "managing ok." AR 31, 1374. Third, in October 2010, a treating physician reported that Ms. Rostocil's pain was better with medication. AR 31, 646. The ALJ omitted the next few lines of this report, however, in which the treating physician noted that Ms. Rostocil's "[p]ain is disruptive of [her] sleep" and she experienced "more pain and paresthesias" after she stopped taking her previous medication. AR 646-47. This evidence is ambiguous as to the level of sustained improvement of Ms. Rostocil's fibromyalgia symptoms, and is, therefore, not clear and convincing evidence to discredit Ms. Rostocil's testimony.

### d.  Activities of daily living

Finally, the ALJ erred by discrediting Ms. Rostocil's testimony based on her daily living activities. The ALJ relied on the fact that Ms. Rostocil reported in July 2010 that "she was able to prepare simple meals, do laundry, and use a day pill container for her medications" as undermining her "credibility with regard to the severity of her symptoms and limitations." AR 34. The ALJ further noted that "[a]lthough [Ms. Rostocil] testified that her mother assists her with taking medications, setting out her clothes to wear, cooking and laundry, nothing in the medical record suggests that [she] is unable to perform these activities herself." *Id.*

PAGE 12 – OPINION AND ORDER

An ALJ may not penalize disability claimants "for attempting to lead normal lives in the face of their limitations." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Activities such as light household chores, cooking meals, and grocery shopping are activities that do not necessarily translate to the work environment. *Id.* at n.1 (finding that limited cooking, cleaning and shopping were not indicative of ability to engage in sustained work activity).

The ALJ erred by discrediting Ms. Rostocil's testimony because she could prepare simple meals, do laundry, and use a pill container for medications. The ALJ overstated Ms. Rostocil's ability to conduct daily living activities,[1] and the ALJ may not penalize Ms. Rostocil for attempting to live a normal life by dressing and feeding herself. Thus, the Court finds that Ms. Rostocil's daily living activities do not constitute a specific, clear, and convincing reason for discrediting her testimony regarding her limitations.

###     e.   Conclusion

The ALJ provided specific, clear, and convincing reasons for discrediting Ms. Rostocil's testimony regarding her psychiatric symptoms. The ALJ has not, however, articulated specific, clear, and convincing reasons for discrediting Ms. Rostocil's testimony as to her pain and exertional limitations.

### 3.   Harmless Error

The ALJ's reliance on Ms. Rostocil's failure to treat her left ulnar neuropathy, improved fibromyalgia, and daily living activities to give little weight to her symptom testimony overall was not harmless error. An ALJ's error is harmless and does not warrant reversal so long as the ALJ provides reasons for rejecting the evidence, substantial evidence supporting the ALJ's

---

[1] Ms. Rostocil can prepare simple meals, but those meals consist of a "can of little sausages, frozen dinners, [and] cans of tuna fish," and she sometimes forgets to cook. AR 238, 301. If she does her own laundry, one load takes her a week to wash. AR 52, 238. She relies on her mother to prepare her daily pill container. AR 301-02.

credibility determination remains, "and the error does not negate the validity of the ALJ's ultimate [credibility] conclusion." *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (quotation marks and citation omitted). The inquiry does not turn on what the ALJ would do if directed to reassess credibility on remand" but "whether the error impact[s] the *validity* of the ALJ's decision." *Id.* (emphasis in original).

In *Carmickle*, the Ninth Circuit affirmed an ALJ's decision to partially discredit a claimant's testimony where the claimant's testimony was largely consistent with the RFC and the remaining valid reasons supporting the ALJ's determination were "specific findings related to [the claimant's] ability to perform vocational functions." *Id.* at 1163. This case is distinguishable from *Carmickle* because Ms. Rostocil's RFC directly conflicts with her testimony, and the ALJ's specific findings as to Ms. Rostocil's psychiatric symptoms are not evidence of her physical capacity to perform vocational functions. According to the VE, if the ALJ gave full credit to Ms. Rostocil's testimony that she cannot "sit or stand for more than 15 minutes without having to take an extended break and more frequent breaks than typically allowed in a normal workday," she could not perform the three sample occupations for which the VE determined Ms. Rostocil was qualified, or any other competitive work. AR 60-61. The credibility of Ms. Rostocil's testimony about her left ulnar neuropathy, fibromyalgia pain, and daily living activities bears directly on whether the ALJ properly gave less weight to her testimony about her endurance for sitting and standing. In contrast, the ALJ's valid finding that Ms. Rostocil's psychiatric symptoms have improved has no bearing on whether she can sit or stand for a period of time.

Similarly, an ALJ's improper discounting of a claimant's testimony may be harmless in light of numerous other valid reasons for discrediting the claimant's testimony overall, such as

the claimant's failure to seek treatment and contradictory testimony. *Batson*, 359 F.3d at 1197. Here, unlike *Batson*, the ALJ provides only one valid reason for partially discrediting Ms. Rostocil's testimony and it is specific to psychiatric symptoms. This does not support discrediting her testimony overall. Evidence of improvement in Ms. Rostocil's psychiatric symptoms alone is not substantial evidence that her physical pain symptoms are less severe than she describes.

### B.  The VA's September 2011 Determination

Ms. Rostocil argues that the Court should remand this case for the ALJ to consider the VA's September 2011 Determination finding her 100 percent unemployable. Pl.'s Brief, ECF 26 at 9. To determine whether to remand a case in light of new evidence, the Ninth Circuit examines "whether the new evidence is material to a disability determination and whether a claimant has shown good cause for having failed to present the new evidence to the ALJ earlier." *Mayes*, 276 F.3d at 462. Evidence is material if it "bear[s] directly and substantially on the matter in dispute." *Id.* (quoting *Ward v. Schweiker*, 686 F.2d 762, 764 (9th Cir. 1982)). A claimant can demonstrate good cause for failing to present evidence to the ALJ earlier if the "evidence could not have been presented at the time of the administrative hearing." *Embrey v. Bowen*, 849 F.2d 418, 424 (9th Cir. 1988). The claimant "must additionally demonstrate that there is a 'reasonable possibility' that the new evidence would have changed the outcome of the administrative hearing." *Mayes*, 276 F.3d at 462 (citation omitted).

The VA's September 2011 Determination is material to Ms. Rostocil's Social Security disability determination because it reflects on her RFC. Ms. Rostocil had good cause for failing to present the September 2011 Determination earlier because the VA had not yet issued it at the time of the hearing. At the September 1, 2011 hearing, Ms. Rostocil testified that her current VA disability rating was 80 percent "with a pending claim for 100 [percent]." AR 47. This is not a

case where the claimant waited to seek out new evidence to strengthen her disability claim after the ALJ's denial. *See Allen v. Sec'y of Health & Human Servs.*, 726 F.2d 1470, 1473 (9th Cir. 1984) (finding that a claimant who waited until after unsuccessful agency and district court hearings to seek out evidence supporting his claim did not have good cause for failing to provide that evidence earlier in the proceedings). Thus, Ms. Rostocil had good cause for not presenting the VA's September 2011 Determination to the ALJ earlier.

The ALJ gave the VA's Original Determination "some weight" but not "controlling weight" in his disability determination because it was "not based on any evidence establishing the more stringent criteria of disability as defined in the laws and regulations governing Social Security Administration disability claims." AR 33. "[A]n ALJ must ordinarily give great weight to a VA determination of disability." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002). "[T]he ALJ may give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record." *Id.*

The ALJ's decision to give the VA's Original Determination only some weight is supported by the record, which includes the VA's numerical determination that Ms. Rostocil was 80 percent unemployable, but does not identify the underlying evidence that the VA used to reach that number. AR 353, 502; *see Scifers v. Comm'n Soc. Sec. Admin.*, 158 F. App'x 16, 17 (9th Cir. 2005) (unpublished) ("The ALJ in this case properly accorded less weight to the VA's disability rating, after explaining that the medical evidence does not support a finding of disability under the SSA's definition."). Thus, the ALJ's decision to give the VA's Original Determination less weight is supported by the persuasive, specific, and valid reason that the VA did not base that determination on evidence that might inform the ALJ's Social Security disability inquiry.

The VA's September 2011 Determination that Ms. Rostocil is 100 percent unemployable applies retroactively beginning September 30, 2010. AR 318-19. The Appeals Council reviewed the September 2011 Determination and found that "all of the evidence identified as supporting the rating increase was considered and weighed by the [ALJ]." AR 2.

The Court disagrees with the Appeals Council and finds that there is a reasonable possibility that the September 2011 Determination would change the outcome of Ms. Rostocil's administrative hearing. Although the VA relied on evidence similar to that relied on by the ALJ to find Ms. Rostocil 100 percent unemployable, not all of the evidence in the September 2011 Determination is cumulative of the record. For example, the September 2011 Determination assigned Ms. Rostocil a GAF score of 40, lower than any of the GAF scores relied upon by the ALJ and indicative of "some impairment in reality testing or communication; or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." AR 321.

Additionally, the ALJ's rationale for giving the VA's Original Determination only "some weight" does not apply to the September 2011 Determination. The only reason the ALJ provided for giving the VA's Original Determination "some weight" instead of the "great weight" generally given to VA disability determinations under *McCartney* was the VA's failure to identify underlying evidence informing the Social Security disability inquiry. The September 2011 Determination corrects that oversight by identifying the evidence that the VA used to find Ms. Rostocil 100 percent unemployable, including evidence that could inform a finding of disability under the Social Security laws and regulations. Thus, the September 2011 Determination should be given great weight.

**C. Sleep Apnea**

Ms. Rostocil argues that the ALJ erred at step two of the sequential analysis in finding that her sleep apnea did not constitute a severe medically determinable impairment. Step two "is a de minimis screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290 (citation omitted). "An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individuals ability to work." *Id.* (quotation marks and citation omitted). An ALJ may find that a claimant does not satisfy the step two inquiry only if the medical evidence clearly establishes that the claimant does not have a medically severe impairment or combination of impairments. *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (quoting SSR 85-28, 1985 WL 56856 (Jan. 1, 1985)).

Ms. Rostocil contends that the ALJ identified no evidence demonstrating that sleep apnea only slightly affected her ability to work. The ALJ found that Ms. Rostocil "reported improvement of her sleep apnea with a CPAP[2]" and, as a result, her sleep apnea is not a severe medically determinable impairment. AR 28. The ALJ relied on evidence that, in 2004, Ms. Rostocil reported that her CPAP "helped her tremendously and [had] stopped her symptoms of daytime somnolence as well as snoring and waking up not breathing at night." AR 28, 1678. Further, in 2006, she reported that she could get a "fairly restful night of sleep." AR 28, 1615. The ALJ also cited evidence that, in 2008, Ms. Rostocil received a new CPAP machine and reported that it was "working well." AR 28, 1489.

The record also documents, however, Ms. Rostocil's persistent insomnia and fatigue, which she argues are indicative of unimproved sleep apnea. Pl.'s Brief, ECF 26 at 6-7; s*ee, e.g.*,

---

[2] A CPAP is a Continuous Positive Airway Pressure machine, used to assist in respiratory ventilation and to treat sleep apnea.

AR 371, 461, 482, 519, 534. In 2009, a treatment provider described Ms. Rostocil's CPAP as "somewhat helpful," but noted that she "sometimes feels suffocated by it." AR 1236. The state agency physical consultant, whose opinion the ALJ gave "great weight," also observed that Ms. Rostocil "complain[ed] of poor sleep . . . despite the CPAP." AR 65.

Taken alone, this evidence raises some doubt as to whether Ms. Rostocil experienced improvement of her sleep apnea. But the record includes additional evidence of factors other than sleep apnea that affect Ms. Rostocil's sleep, such as her mental health, staying up "thinking about her life, like schoolwork, bills, [and] housework," and having nightmares. AR 65, 356, 381, 390. These other factors could cause Ms. Rostocil fatigue and sleeplessness even if her sleep apnea has improved.

Given this evidence, the record supports more than one rational interpretation as to whether Ms. Rostocil's sleep apnea has improved. The ALJ reached one reasonable interpretation, supported by substantial evidence that Ms. Rostocil has generally experienced successful results using a CPAP over the past ten years. The Court will not substitute its judgment for that of the ALJ where the ALJ has provided substantial evidence that Ms. Rostocil experienced improvement of her sleep apnea using a CPAP. *See Burch*, 400 F.3d at 679.

The fact that a claimant experiences improvement of an impairment does not alone, however, demonstrate that the impairment is not severe. *See Halohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) ("That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace."). In contrast, if the impairment is controlled with treatment, it is not disabling for the purpose of determining eligibility for Social

Security benefits. *Warre v. Comm'r Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); *see also Cleveland v. Astrue*, 2011 WL 3443794, at *24 (9th Cir. Aug. 8, 2011).

The ALJ did not find, and the record does not support finding, that Ms. Rostocil's CPAP completely controlled her sleep apnea. Instead, the ALJ relied on the improvement of Ms. Rostocil's sleep apnea to conclude that her sleep apnea is not a severe impairment. The Court must "review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray*, 554 F.3d at 1225. The Court finds that the ALJ erred by relying on the improvement of Ms. Rostocil's sleep apnea to determine that her sleep apnea is not a severe impairment without providing additional evidence or reasoning supporting that determination.

This error, however, was harmless because the ALJ accounted for Ms. Rostocil's fatigue and insomnia in the sequential evaluation process. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (finding an ALJ's error of not listing an impairment at step two of the sequential evaluation process harmless because the ALJ nonetheless considered the limitations imposed by the impairment in his inquiry). Ms. Rostocil argues that the ALJ's error was prejudicial because the occupations that the VE found her capable of performing in step five do not accommodate her limited concentration and need for a daytime nap, which she feels are caused by her sleep apnea. Pl.'s Brief, ECF 26 at 7.

The record does not support Ms. Rostocil's argument that the ALJ ignored her fatigue testimony after finding that her sleep apnea is not a severe impairment. To the contrary, the ALJ followed the state agency physical consultant's recommendation that Ms. Rostocil "should be restricted from concentrated exposure to hazards as her poor sleep may interfere with reaction time" when he determined her RFC. AR 30, 58, 69. By following this recommendation, the ALJ

PAGE 20 – OPINION AND ORDER

accounted for Ms. Rostocil's limitations caused by her sleep apnea and general fatigue in the sequential evaluation process. Thus, any error by the ALJ in finding that Ms. Rostocil's sleep apnea is not a severe impairment is harmless because it does not change the validity of Ms. Rostocil's RFC overall or the ALJ's resulting determination that Ms. Rostocil is not disabled for the purpose of Social Security benefits. *See Carmickle*, 533 F.3d at 1162.

## D.  Remand for Benefits

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000), *cert. denied*, 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011) (quoting *Benecke*, 379 F.3d at 593). The court may not award benefits punitively and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act. *See id.*

Under the "credit-as-true" doctrine, evidence should be credited and an immediate award of benefits directed only where: "'(1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.'" *Id.* (quoting *Benecke*, 379 F.3d at 593). The "credit-as-true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (citing *Bunnell*, 947 F.2d at 348). The reviewing court should decline to credit testimony when

"outstanding issues" remain. *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010) (quotation marks and citation omitted).

Although outstanding issues remain with respect to Ms. Rostocil's left ulnar neuropathy and the VA's September 2011 Determination, as explained above, the ALJ failed to provide legally sufficient reasons for rejecting Ms. Rostocil's symptom testimony regarding her fibromyalgia pain and its concomitant exertional limitations. Had Ms. Rostocil's testimony been properly credited, her RFC would have included a limitation that she "cannot sit or stand for more than fifteen minutes without having to take an extended break and more frequent breaks than typically allowed in a normal workday." AR 53-54, 60. According to the VE, if those limitations would have been included in Ms. Rostocil's RFC, she would be unable to perform the occupations for which the VE determined she was qualified, or any other competitive work. AR 60-61. Based on this finding, the record shows that properly crediting Ms. Rostocil's testimony requires a finding of disability. This portion of the record is fully developed and there are no outstanding issues to resolve. The portion of the record that does require additional development does not negate the finding of disability that would be required if Ms. Rostocil's testimony were properly credited.

**CONCLUSION**

The Commissioner's decision that Ms. Rostocil is not disabled is **REVERSED** and this case is **REMANDED** for an award of benefits.

**IT IS SO ORDERED**.

DATED this 2nd day of April, 2014.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge